IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADAM FRENCH,<br><br>                **Plaintiff,**<br><br>   vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security;<br><br>                **Defendant.** | 8:24CV77<br><br>**MEMORANDUM AND ORDER** |

       Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Before the Court are Plaintiff's Motion for Order Reversing the Commissioner's Decision (Filing No. 13) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 16). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Filing No. 7). The Court has thoroughly reviewed the parties' filings and the administrative record. For the following reasons, the Court will grant Plaintiff's Motion for Order Reversing the Commissioner's Decision and deny the Commissioner's Motion to Affirm Commissioner's Decision.

## PROCEDURAL BACKGROUND

       Plaintiff previously filed a Title II application for a period of disability and insurance benefits, alleging disability beginning June 10, 2016; this application was adjudicated with a favorable initial determination on April 17, 2018, but a subsequent continuing disability review ("CDR") completed on February 9, 2021, found Plaintiff no longer disabled as of February 9, 2021. Plaintiff did not timely appeal that CDR. On July 15, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 10, 2016. The claim was denied initially on January 28, 2022, and upon reconsideration on December 1, 2022. On December 19, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 16).

       Plaintiff and counsel appeared for a telephonic hearing before the ALJ on April 27, 2023. At the hearing, the ALJ received testimony from Plaintiff and an impartial vocational expert. The ALJ issued an unfavorable decision on June 7, 2023. The Appeals Council rejected Plaintiff's

request for review on January 12, 2024. Plaintiff timely filed this action for review of the ALJ's decision on February 28, 2024. (Filing No. 1).

## FACTUAL BACKGROUND AND MEDICAL EVIDENCE

Plaintiff was born on April 11, 1985. Plaintiff has a high school education and approximately two years of college. Plaintiff was previously receiving disability insurance benefits until a CDR determined that he was no longer disabled as of February 9, 2021 (Filing 9-2, Tr. 16). Plaintiff then filed this application on July 15, 2021 (Filing 9-3, Tr. 72). In the current application, Plaintiff alleged he became disabled on June 10, 2016, based on autism, depression, anxiety, ADHD, personality traits, and PTSD. (Tr. 167; Tr. 183). However, the ALJ found no basis to reopen the CDR determination. (Tr. 16).

With respect to medical records and other evidence of record, the Court adopts Plaintiff's recitation of facts set forth in his Statement of Undisputed Material Facts (Filing No. 13 at pp. 4-6) as agreed with by the Commissioner (Filing No. 17 at p. 2). The Court also adopts the Commissioner's Supplemental Facts (Filing No. 17 at pp. 2-3). These statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts are discussed as needed to address the parties' arguments.

## OPINION EVIDENCE AND EVALUATIONS

Michael Coy, MD, ("Dr. Coy") has been Plaintiff's treating psychiatrist for several years. Dr. Coy treated Plaintiff for many of his adult years and encountered him regularly and routinely, even at times monthly or bi-weekly for his medication purposes. Dr. Coy also saw Plaintiff as a teenager for psychiatric treatment. (Tr. 438). Dr. Coy manages Plaintiff's medications. He stated that Plaintiff has deficits in nonverbal communication, maintaining and understanding relationships, adapting or adjusting to minor changes in routines or schedules, inflexibility to minor changes, and difficulties with transitions, judgment and insight. (Tr. 438).

Dr. Coy completed a Mental Residual Functional Capacity Assessment on December 6, 2022. (Tr. 434). Dr. Coy opined Plaintiff's limitations in understanding, memory, sustained concentration and persistence, social interaction, adaption, were "Category 5," that is, precludes performance for 15% or more of an 8-hour workday. (Tr. 435-436). In Dr. Coy's attached letter, he opined within a reasonable degree of medical certainty that Plaintiff will always be

unemployable due to his lifelong developmental disability of autism and chronic mental illness. (Tr. 439).

Robert Willbee, III, Psy.D. ("Dr. Willbee") performed a consultative psychological assessment on November 17, 2021. (Tr. 357). Plaintiff's father participated in the assessment. Dr. Willbee found Plaintiff's prognosis is poor given the current severity of his mood issues paired with his lack of involvement in psychotherapy, poorly developed endogenous coping system, decreased level of motivation, low degree of community mobility and socialization, and difficulty in routinely completing their ADLs and IADLs independently. Based on Dr. Willbee's evaluation, Plaintiff is able to understand and remember simple one to two step instructions and sustain attention to simple tasks for a period of at least an hour. (Tr. 357). Dr. Willbee found that, given Plaintiff's mood and issues with trauma, Plaintiff will have moderate difficulty with remembering detailed instructions, sustaining concentration for tasks that require many steps or complicated instructions to complete, adapting to consistently changing work environments, and involvement with employees, management and the public. (Tr. 357-358). Dr. Willbee noted Plaintiff will only bathe on a monthly basis; does not routinely clean his room or engage in household cleaning tasks; has difficulty in maintaining social functioning; cannot adapt to changed in his environment; among other restrictions. Dr. Willbee did note Plaintiff has the ability to understand and remember short and simple instructions, demonstrated by completing several self-inventories after brief instructions. (Tr. 357-369). Dr. Willbee concluded Plaintiff's "self-perceived abilities appear congruent with their current functioning levels as evidenced in both objective and subjective accounts" due to his long-standing issues with anxiety, and autism spectrum disorder with more recent development of depressive and PTSD symptoms. (Tr. 368).

State agency consultant, Helen Montoya, PhD ("Dr. Montoya"), assessed Plaintiff's medical and psychological records, ultimately concluding he had "no marked impairments that would limit him from work related activity." (Tr. 74). Dr. Montoya assessed Plaintiff with mild limitations in understanding, remembering or applying information, and moderate limitations in the ability to interact with others and maintain social appropriate behavior, in the ability to concentrate, persist, or maintain pace, complete a normal workday and workweek without interruption from symptoms, and in the ability to adapt or manage himself. Dr. Montoya noted Plaintiff would need advance warning of upcoming changes when possible and his ASD makes it difficult for him to adapt to change and handle stress. She noted Plaintiff is able to drive but would struggle to use

public transportation, he has not been self-sufficient and is dependent upon his parents for housing and food, he has low energy and motivation for activities that are not directly within his area of interests, but he does take care of several pets and he does artwork, which are indicative of the ability to make goals and work toward them. (Tr. 75, 77-78, 83). State agency consultant, Dr. Rebecca Braymen, generally concurred with the assessment of Dr. Montoya. (Tr. 90-95).

## THE ALJ HEARING

Plaintiff, represented by counsel, appeared by telephone at the hearing before the ALJ on April 27, 2023. (Tr. 35). Plaintiff testified regarding his past work. In college, Plaintiff worked at Stoysich House of Sausage but quit with an outburst of expletives after a conflict in the workplace. (Tr. 41). Plaintiff next worked at a Dairy Queen for several years until he quit in an outburst/was fired in 2014 after a conflict with his boss. (Tr. 39-41). Plaintiff then worked at Bed, Bath & Beyond for about nine months, but left in 2016 after he experienced an incident of sexual harassment, and has not worked since. (Tr. 42-44). Plaintiff generally worked part-time hours and testified he could not maintain full time hours due to his mental conditions. (Tr. 44-45). Plaintiff testified he has had a "clash" with someone every place he has worked. (Tr. 52).

Plaintiff first began seeing Dr. Coy at age 19, and engaged in irregular but frequent therapy sessions over the next several years. Plaintiff had not been to therapy for a while due to difficulties obtaining services through Medicare. (Tr. 45-46).

Plaintiff testified he lives with his parents and has never moved out. He does not regularly take care of cooking, cleaning, or laundry. (Tr. 47). Plaintiff testified he is a talented cook, but his autism gives him problems with making decisions, and rarely breaks a routine. (Tr. 47-48). Plaintiff does not currently have a driver's license, but can drive with "great anxiety." (Tr. 48). Plaintiff testified he gives his money to his parents to manage, but he spends small amounts each week. (Tr. 49). Plaintiff testified he does not participate in social activities, groups, meetings, or church, and he does not have friends. He does not "have anywhere to go or do anything" but occasionally goes to the comic book shop and occasionally talks to "a guy that works at the vape shop." (Tr. 49). Plaintiff testified with autism "you get obsessions," and he collects comic books "like giant trading cards of art." (Tr. 50). Plaintiff testified having problems showering and cleaning himself, and believes he showered "four or five times last year" and maybe five to seven

times the current year but was "on track for improvement." Plaintiff testified he was not motivated to clean himself and "did not care at all." (Tr. 56).

Plaintiff was receiving disability benefits for a number of years, but was taken off them after his condition was assessed to have improved in 2021. Plaintiff disagreed with that decision and testified his condition was currently "much worse." (Tr. 52-53). Plaintiff believed Adderall helps his ADHD symptoms, but experienced side effects taking Lexapro. Plaintiff testified he used to experience frequent "full" panic attacks, but now experiences about one a month. (Tr. 54-55).

Plaintiff testified he could not do a "simple task for a long time" because it would not be "mentally stimulating enough." Plaintiff did not believe he could work a full time schedule because he needs "remittances" due to his mental conditions. (Tr. 57-58). Plaintiff testified the symptoms from his mental conditions of autism, PTSD, and ADHD interact, and there is not a work environment for his sensitivities. (Tr. 59-61).

An impartial vocational expert ("VE"), Melinda, testified at the administrative hearing. The VE classified Plaintiff's past work as a fast-food manager as light work, SVP 5, skilled, and as a stocker as medium work, SVP 2, unskilled. (Tr. 61-62). The ALJ presented the following hypothetical to the vocational expert:

> I'd like you to assume a hypothetical person of [Plaintiff's] same age, education, past work experience. No exertional or other physical limitations. Mentally, assume an individual who would be able to perform simple and routine tasks, interact with co-workers, occasionally, no – I'll say brief and superficial interaction with the public. With those abilities and limitations, would any -- would either of the past jobs fit?

(Tr. 61-62). The VE testified the individual could perform past work as a stocker. (Tr. 63). If the hypothetical individual was additionally unable to perform assembly line type work, but could do more goal-oriented tasks, and could respond appropriately to occasional changes in work duties, that individual could still perform work as a stocker. The hypothetical individual could also perform the following medium, SVP 2, unskilled jobs: janitor; prep cook; and detailer, jobs which exist in significant number in the national economy. (Tr. 63). The VE testified that the DOT does not address the following areas, but based on her opinion and experience, it is her professional opinion that individuals who miss two or more workdays per month are not able to maintain competitive employment; a typical employer will tolerate no more than 15% time off task; and a typical employer will offer two 15 minute and one 30-minute work break within an 8-hour work

period, but if individuals are taking five minutes or more per hour beyond that, they are not able to maintain competitive employment. (Tr. 64-65). The VE testified an individual would need to be able to apply, successfully interview, and accept a job to maintain employment. (Tr. 66).

## THE ALJ'S DECISION

The ALJ evaluated whether Plaintiff was disabled using the five-step sequential process required in an initial disability determination.[1] 20 C.F.R. § 404.1520(a)(4). The ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025, and has not engaged in substantial gainful activity since February 10, 2021, the potential onset date. (Tr. 19).

The ALJ found Plaintiff has the following severe impairments of autism spectrum disorder; anxiety disorder; PTSD; and depressive disorder; but that the severity of these mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings under 12.00 for mental disorders, including listings 12.04, 12.06, 12.10, and 12.15. (Tr. 19). In making that finding, the ALJ concluded Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, to satisfy the "paragraph B" criteria.

The ALJ found Plaintiff has a mild limitation in understanding, remembering or applying information, pointing to evidence that Plaintiff's written statements and testimony indicate that he is able to cook, remember to take his medications, buy and sell comic books, and prefers written instructions over spoken instructions. The ALJ also noted mental status exams documented limited abnormalities in this area, with an instance in February 2021 in which his short- and long-term memory were assessed as impaired. (Tr. 19-20). The ALJ also relied on the consultative psychological exam by Robert Willbee, III, Psy.D. ("Dr. Willbee"), who found Plaintiff retained

---

[1] The five steps are:

> (1) whether the claimant is currently engaging in substantial gainful activity, which is defined as work activity that is both substantial and gainful, (2) if not, whether the claimant ahs a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe', (3) determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 and prior to step 4, the ALJ must determine claimant's residual functional capacity, (4) whether the claimant has the residual functional capacity to perform the requirements of their past relevant work, and (5) whether the claimant is able to do any other work considering their RFC, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4).

6

the ability to understand and remember short and simple instructions, and the State agency psychological consultants at the initial and reconsideration levels, who assessed no more than a mild limitation in this area. (Tr. 20).

The ALJ found Plaintiff has moderate limitation in interacting with others because the "record medical evidence lacks clinical observations or exam findings that might support more than a moderate limitation in this area." Despite Plaintiff's subjective reports of home isolation, his exams typically indicated he was cooperative and exhibited unremarkable mood and affect, although with some instances of mood disturbance and flat affect. (Tr. 20). Dr. Willbee also noted Plaintiff reports social anxiety, although he regularly interacts with a friend. The State agency psychological consultants at the initial and reconsideration levels also assessed Plaintiff with no more than a moderate limitation in this area. (Tr. 20-21).

The ALJ found Plaintiff has moderate limitation in concentrating, persisting or maintaining pace, again pointing to mental status exams of record documenting limited abnormalities related to this area. State agency psychological consultants at the initial and reconsideration levels also assessed no more than a mild limitation in this area. (Tr. 21).

The ALJ found Plaintiff has moderate limitation in adapting or managing oneself. The ALJ noted Plaintiff's testimony and written statements regarding difficulty managing, understanding, and responding to emotions, mood disturbance, and frequent panic attacks, and his side effects from medication; nevertheless, the ALJ determined the record medical evidence lacked support for more than a moderate limitation. The ALJ noted Plaintiff's psychiatrist "consistently characterized his and judgment as no less than fair," and his treatment notes consistently lacked "evidence of thought disturbance or abnormal thought associations, and, for the most part, the claimant's mood and affect were unremarkable." Plaintiff's medication regimen has been "relatively stable," and although "Dr. Willbee observed some deficits in grooming and hygiene, and he described the claimant's mood as anxious and dysthymic," the State agency psychological consultants at the initial and reconsideration levels assessed no more than a moderate limitation in this area. (Tr. 21).

The ALJ also determined that evidence fails to establish the presence of the "paragraph C" criteria, finding the record and Plaintiff's testimony do not show Plaintiff has only marginal adjustment, that is, a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. (Tr. 21).

Based upon the record, the ALJ formulated Plaintiff's RFC as follows:

7

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: mentally, [Plaintiff] can perform simple and routine tasks. He can interact with the public on a brief and superficial basis, but he can interact with coworkers on an occasional basis. He can respond appropriately to occasional changes in work duties. He is unable to perform assembly-line style work but can perform goal-oriented work.

(Tr. 21-22). In making such a determination, the ALJ followed a two-step process.[2] The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23). The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent because the record medical and other evidence do not show that his symptoms are as intense, persistent, and limiting as alleged. (Tr. 23). The ALJ stated the formulated RFC considered the longitudinal record to assess how the combined effects of Plaintiff's impairments limit his work-related abilities over time, in accordance with SSR 85-16 (Residual Functional Capacity for Mental Impairments) and SSR 16-3p (Evaluation of Symptoms in Disability Claims). (Tr. 23). The ALJ found that the several month gaps in Plaintiff's treatment; the relative stability of his medication regimen with subjective and objective evidence of its effectiveness; frequent unremarkable exam findings; and Plaintiff's enjoyment of hobbies—including his hobby of trading in comic books, which the ALJ opined is "inconsistent with his reported aversion to the sound of crinkling paper"—give rise to a reasonable inference that Plaintiff's "lack of employment is not solely a result of his medically determinable impairments but, at least to some extent, a matter of choice and convenience." (Tr. 23-25).

      The ALJ also evaluated the medical opinions and prior administrative medical findings. The ALJ found that the assessments of the State agency psychological consultants at the initial and reconsideration levels are persuasive, finding they were "adequately supported with references to [Plaintiff's] statements and record medical evidence" and were "consistent with the limited abnormalities documented during the claimant's relatively conservative treatment with Dr. Coy." (Tr. 25).

---

[2] The two-step process the ALJ must follow is to first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once such impairment has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. 20 C.F.R. 404 § 1529; SSR 16-3p.

The ALJ found Dr. Coy's opinion was unpersuasive because his examinations report generally normal findings, except for the relative increase in abnormalities he documented on February 18, 2021. Dr. Coy maintained Plaintiff on a relatively stable medication regimen, which does not support he extreme limitations he now endorses. Dr. Coy's medical opinion consisted of a series of checked boxes on a form, and the lines on the form allowing for explanation are largely blank, and therefore Dr. Coy essentially did not explain his medical opinion. The ALJ also discounted Dr. Coy's narrative letter because "it does little more than recite [Plaintiff's] self-reported symptoms and functioning and highlight symptoms commonly associated with [Plaintiff's] mental impairments." (Tr. 26).

The ALJ found Dr. Willbee's opinion somewhat persuasive because his conclusions regarding Plaintiff's ability to sustain attention to simple tasks is supported by Plaintiff's report, and that of his father, of difficulty initiating and completing tasks, and are also generally consistent with the addition of Adderall to Plaintiff's medication regimen within months of the exam. The ALJ found Dr. Willbee's conclusion that Plaintiff lacked an ability to adapt to changes in his environment is supported by Plaintiff's self-report, but the consistency of this opinion is less supported by Plaintiff's development of a hobby and experiencing overall improvement with a relatively stable medication regimen. (Tr. 26).

The ALJ found the opinion of Nicole Blazek, Ph.D. ("Dr. Blazek"), who performed a consultative psychological exam as part of the CDR determination, generally persuasive. The ALJ found Dr. Blazek's conclusions are supported by Plaintiff's self-report of mild problems remembering, understanding or carrying out complex instructions and procedures, and her observation that he appeared able to receive, organize, analyze, remember and express information appropriately in a conversational setting and the other limited abnormalities of her exam. The ALJ noted other medical evidence in the record developed subsequent to Dr. Blazek's exam tends to detract some consistency from her opinion; for example, Dr. Blazek's opinion that Plaintiff would require instructions to be demonstrated multiple times is inconsistent with Dr. Willbee's observation that Plaintiff had no problem completing forms and questionnaires. (Tr. 26).

The ALJ also considered statements from "non-medical sources," including Plaintiff's mother, and statements Plaintiff's father made to Dr. Willbee. (Tr. 26-27).

The ALJ found Plaintiff has past relevant work as a fast-food manager at a Dairy Queen restaurant and as a stocker at Bed, Bath & Beyond. The ALJ determined this work was substantial

9

gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. However, based upon the vocational expert's testimony, the ALJ determined Plaintiff was unable to perform any past relevant work. (Tr. 27).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. In reliance on the vocational expert's testimony, the ALJ found Plaintiff has the RFC to perform requirements of representative unskilled occupations such as a janitor, prep cook, and detailer, which jobs exist in significant numbers in the national economy. (Tr. 28-29). The ALJ recognized the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, but found this discrepancy is reasonably explained by supplementing her testimony with her professional experience in job placement. (Tr. 29). The ALJ therefore concluded Plaintiff has not been under a disability within the meaning of the Social Security Act from February 10, 2021, through the date of this decision. (Tr. 29).

In this appeal, Plaintiff contends remand is required because (1) although the ALJ found the opinions of state agency psychological consultants, Dr. Montoya and Dr. Brayman, persuasive, the ALJ failed to incorporate their limitations into the RFC; and (2) the ALJ's assessment of Plaintiff's subjective complaints is not supported by substantial evidence. (Filing No. 13 at pp. 9-14).

**STANDARD OF REVIEW**

After a claimant has sought review of an ALJ's decision by the Appeals Council, the claimant is entitled to judicial review of the ALJ's decision in federal district court. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019); *see also* 42 U.S.C. § 405(g). Because the Appeals Council declined review, the ALJ's decision is the final decision of the Commissioner. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). On review, the district court determines whether the Commissioner's decision complies with relevant legal requirements or "whether substantial evidence on the record as a whole supports the ALJ's decision." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (internal citation omitted)); *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted). Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as

10

adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under the substantial evidence standard, the district court will consider "evidence that detracts from the [ALJ's] decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (citing *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)). However, the district court will not reverse an ALJ's decision "simply because some evidence supports a conclusion other than that reached by the [ALJ]." *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)). The district court must also affirm the ALJ's decision "[i]f, after reviewing the record, the [district] court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). "'It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo.'" *Dols*, 931 F.3d at 746 (8th Cir. 2019) (quoting *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). Nevertheless, the court's review is "more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp'" of the Commissioner's decision. *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (internal citations omitted). The Commission's decision should only be disturbed "if it falls outside the available zone of choice." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (quotation omitted). "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

## ANALYSIS

**I.   The ALJ's Failure to Explain Omission of Limitations from Plaintiff's RFC**

The ALJ found the opinions of psychological state agency consultants, Dr. Montoya and Dr. Braymen, to be persuasive, but omitted certain limitations contained within their opinions when formulating Plaintiff's RFC. (Filing No. 13 at pp. 9-13; Tr. 25). Plaintiff argues that the ALJ committed reversible error by failing to explain why those limitations from medical opinions deemed persuasive were omitted from the RFC. (Filing No. 18 at p. 2).

11

The Commissioner asserts the ALJ considered the record as a whole, including Plaintiff's improvement with medication, his conservative treatment, unremarkable examination findings, the gaps between visits with his psychiatrist, and his psychiatrist's description of his condition as "stable" and "improving." (Filing No. 17 at p. 4).  The Commissioner contends the ALJ adequately accounted for Plaintiff's symptoms by limiting him to simple, routine tasks; brief, superficial interaction with the public; occasional interaction with coworkers; occasional changes in work duties; and no assembly-line work.  The Commissioner therefore asserts the ALJ's RFC finding as a whole is supported by substantial evidence.  (Filing No. 17 at p. 4).

Under the revised regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source, including treating providers.  *See Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).  "The revised regulations direct ALJs to consider five factors when evaluating the persuasiveness of a provider's medical opinion: (1) whether it is supported by objective medical evidence and the provider's own explanations, (2) whether it is consistent with other evidence in the record, (3) the relationship the provider has with the claimant, (4) the provider's specialization, and (5) any other relevant factors." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).  "Supportability and consistency are the most important factors." *Id.* (citing § 404.1520c(a)).  An ALJ "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." 20 C.F.R. § 404.1520c(b)(2); accord 20 C.F.R. § 416.920c(b)(2).  With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).  As for consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).  Where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis."  20 C.F.R. §§ 404.1520c(b)(l), 416.920c(b)(l).

Plaintiff argues that the opinions of the two psychological state agency's consultants—opinions the ALJ found persuasive—support additional limitations regarding Plaintiff's failure to maintain hygiene, needing advance warning of upcoming changes, and dependency on his parents

12

for housing and food. (Tr. 7 and 93). However, the ALJ did not explain why these limitations were not incorporated into Plaintiff's RFC. The Commissioner asserts the ALJ was not required "to adopt the exact limitations set forth in the medical opinions or prior administrative medical findings, even those he or she finds persuasive." (Filing No. 17 at p. 12). The Court agrees with the Commissioner that an ALJ is not required to accept all limitations proposed by a persuasive source. *See Wolynski v. Kijakazi*, No. 4:21-CV-1158 SRW, 2022 WL 1521619, at *8 (E.D. Mo. May 13, 2022) ("[T]here is no requirement that an ALJ adopt all of the findings or language of the state agency medical consultant, 'even if the opinion is given substantial weight.'") (quoting *Owens v. Saul*, 2020 WL 2319880, at *4 (W.D. Mo. May 11, 2020)). Additionally, "the ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (citing *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016)).

However, Plaintiff is not arguing remand is required because the ALJ failed to incorporate those specific limitations into the RFC; instead, Plaintiff contends remand is required because the ALJ did not provide any rationale or explanation for rejecting these portions of the opinions he found persuasive. Plaintiff's position is supported by a growing number of district courts within the Eighth Circuit:

> [C]ourts have frequently found remand required where an ALJ finds a medical opinion persuasive, yet declines to include some of the limitations found in that opinion in that RFC and does not explain why. See, e.g., *Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) (remanding where the ALJ gave "significant weight" to two medical opinions yet failed to include limitations from those opinions in the RFC or in the hypothetical question posed to the VE); *Wolynski v. Kijakazi*, No. 4:21-CV-1158 SRW, 2022 WL 1521619, at *9 (E.D. Mo. May 13, 2022) (finding error and remanding where the ALJ found the opinion of the non-examining state agency medical consultant "persuasive," yet omitted from the RFC the opined limitation of one- or two-step tasks and instructions, without explaining why); *Batson v. Kijakazi*, No. 20-03251-CV-S-WBG, 2022 WL 501405, at *4 (W.D. Mo. Feb. 18, 2022) ("Because the ALJ found Dr. Allen's opinions to be persuasive, supported by objective evidence, and consistent with the record, the ALJ should have included all limitations set forth by Dr. Allen. Alternatively, if the ALJ chose not to include any of Dr. Allen's limitations, the ALJ should have explained why any excluded limitation was not adopted. Here, the ALJ failed to do either. Thus, the RFC is not supported by substantial evidence."); *Berry v. Kijakazi*, No. 4:20-CV-890 RLW, 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021) (finding error and remanding where the ALJ omitted from the RFC, without discussion, a limitation to two-step commands that was included in a non-examining psychological consultant's opinion; stating, "Because the ALJ did not provide a reason for rejecting [the psychological consultant's] opinion on the two-step command limitation—while including [the psychological consultant's] other opined

13

limitations in the RFC— the Court would be required to determine in the first instance whether there was substantial evidence to support the ALJ's decision to reject that limitation. It is not within the Court's purview to speculate why the ALJ may have rejected certain evidence."); *Masden v. Saul*, No. 4:20-CV-00267-MDH, 2021 WL 3172934, at *2 (W.D. Mo. July 27, 2021) (noting that under SSR 96-8p, "If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted"; finding remand require where "[t]he ALJ did not explain why, having found Dr. Sullivan's opinions 'persuasive,' she did not include [some of the] limitations [from the opinions] in the RFC").

*Bedore v. Kijakazi*, No. 4:22-CV-567-SPM, 2023 WL 6064854, at *5 (E.D. Mo. Sept. 18, 2023); accord *Wolynski v. Kijakazi*, No. 4:21-CV-1158 SRW, 2022 WL 1521619, at *9 (E.D. Mo. May 13, 2022) (remanding for further proceedings because the ALJ found a medical professional's opinion to be persuasive, well-explained, well-supported, and consistent with the record, but did not explain why the limitations from that opinion were omitted from the RFC); *Carey v. O'Malley*, No. 4:23-CV-00860-NCC, 2024 WL 4238691, at *6 (E.D. Mo. Sept. 19, 2024) (finding remand was required because "the ALJ explicitly included in his ruling Dr. Cunningham's opinion that plaintiff would have 'moderate problems interacting appropriately with supervisors,' and found that opinion persuasive, yet omitted from the RFC a limitation from that opinion," but provided no reasons for rejecting that limitation); *Harris v. Dudek*, No. 4:23CV1705 HEA, 2025 WL 776516, at *3 (E.D. Mo. Mar. 10, 2025) (remanding for further proceedings because the ALJ failed to explain why the ALJ did not incorporate the claimant's limitation to work with unchanging instructions as provided in the persuasive opinions); *S. v. Dudek*, No. 24-CV-2784 (JWB/DLM), 2025 WL 1667047, at *7 (D. Minn. Apr. 28, 2025), *R&R adopted sub nom. Joye S. v. Bisignano*, No. CV 24-2784 (JWB-DLM), 2025 WL 1666800 (D. Minn. June 12, 2025) (recommending remand due to ALJ's failure to explain why she did not adopt the expert consulting psychologist's persuasive opinion with respect to Plaintiff's limitations concerning social interactions with coworkers and supervisors in fashioning Plaintiff's RFC).

Here, the ALJ found the medical opinions of both Dr. Montoya and Dr. Braymen to be persuasive, but did not include the limitations recommended by those opinions in Plaintiff's RFC. Further, the ALJ did not explain why those limitations were not adopted. While it is true an ALJ is not required to adopt the exact limitations in medical opinions he or she finds persuasive, a specific finding as to why the ALJ chose not to accept the limitations in a persuasive opinion is necessary. *See Batson v. Kijakazi*, 2022 WL 501405, at *4 (W.D. Mo. Feb. 18, 2022) ("[I]f the

14

ALJ chose not to include any of [a medical professionals] limitations, the ALJ should have explained why any excluded limitation was not adopted."). "The Court 'cannot speculate whether or why an ALJ rejected certain evidence.'" *Robertson v. Dudek*, No. 4:24-CV-00337-NCC, 2025 WL 812142, at *4 (E.D. Mo. Mar. 13, 2025) (quoting *Bedore*, 2023 WL 6064854, at *5)). The lack of explanation means this Court is unable to determine whether there was substantial evidence to support the ALJ's decision to reject Dr. Montoya's and Dr. Brayman's limitations. *See Berry v. Kijakazi*, No. 4:20-CV-890 RLW, 2021 WL 4459699, at *8 (E.D. Mo. Sep. 29, 2021) (citing *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995)) ("[T]he Court would be required to determine in the first instance whether there was substantial evidence to support the ALJ's decision to reject that limitation. It is not within the Court's purview to speculate why the ALJ may have rejected certain evidence."). "The record before the Court is inadequate to permit meaningful review as to whether the decision to omit the limitation by the RFC was supported by substantial evidence." *Robertson*, 2025 WL 812142, at *6. Therefore, the Court finds that the ALJ's failure to explain why the limitations contained in Dr. Montoya and Dr. Braymen were not adopted was legal error.

## II.   The ALJ's Assessment of Plaintiff's Subjective Complaints

Plaintiff also contends the ALJ's assessment of Plaintiff's subjective complaints is not supported by substantial evidence in the record. (Filing No. 13 at p. 14). The Commissioner argues that the ALJ gave valid reasons for finding that Plaintiff's complaints were not entirely consistent with the record. (Filing No. 17 at p. 13).

When assessing a plaintiff's RFC, an ALJ must evaluate the claimant's subjective complaints. *McCoy v. Saul*, 2021 WL 1537034, at *3 (E.D. Ark. Apr. 19, 2021) (citing *Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001)). This is done by "determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of her pain or other symptoms." *Id.* (citing SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529). Social Security Ruling 16-3p eliminated the word "credibility" when analyzing a plaintiff's subjective complaints, instead opting for an analysis of the "consistency" of a plaintiff's allegations with other evidence. *Bascio v. O'Malley*, No. 2:23-CV-21-ACL, 2024 WL 4227146, at *6 (E.D. Mo. Sept. 18, 2024) (citing SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529). "If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may

decline to credit a claimant's subjective complaints." *Id.* When evaluating the intensity, persistence, and limiting effects of a plaintiff's symptoms, the ALJ must consider all of the evidence, including: "objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (i.e., pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions." *Id.* (citing *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019)). "The ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence." *Purvis v. Comm'r., Soc. Sec. Admin.*, No. 3:20-CV-142-BD, 2021 WL 1962568, at *2 (E.D. Ark. May 17, 2021).

Here, Plaintiff and his father described difficulty Plaintiff has with laundry, remembering a daily schedule, proper hygiene, taking care of finances, and consistently meeting daily activities. (Tr. 367-368). Dr. Willbee performed a medical assessment, during which Plaintiff performed in the exceptionally low range of the Activities of Daily Living such as cooking, personal hygiene, laundry, finance management, and driving. (Tr. 366-367). Dr. Willbee determined that Plaintiff's self-perceived abilities appeared congruent with current functioning levels. Nevertheless, the ALJ the ALJ discounted Plaintiff's subjective complaints around these issues, stating:

> Dr. Willbee based his conclusion that [Plaintiff] lacked an ability to adapt to changes in his environment on [Plaintiff's] report of maintaining a routine, avoiding social environments, and not functioning well in his daily activities. While there is some evidence in the record of difficulty with these, it is not to the degree the claimant reported or that Dr. Willbee endorsed.

(Tr. 25). Additionally, the ALJ concluded that while the claimant receives some support in his living environment, which can be attributed to his mental health symptoms, "this is more of a choice out of convenience and availability than a need arising from his impairments." (Tr. 25). In making these findings, the ALJ relied on his own subjective determinations rather than objective medical evidence, which was improper. *See Pates-Fires v. Astrue*, 564 F.3d 935, 946-47 (2009) (quoting *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Plaintiff has autism and the ALJ found that Plaintiff's autism spectrum disorder was a severe impairment. Without even considering behaviors of this severe impairment, which can include difficulties maintaining proper hygiene and the like, the ALJ simultaneously declared that Plaintiff's lack of self-care is a product of his own choices.

The Court thus concludes that this matter should be remanded to the Commissioner, under sentence four of 42 U.S.C § 405(g), for the ALJ to complete the record required by the governing regulations. See 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). On remand, the ALJ should explain why Plaintiff's RFC should (or should not) be further limited per Dr. Montoya and Dr. Braymen to as to workplace interactions with coworkers and supervisors, ability to maintain personal hygiene, advance warning of upcoming changes, and ability to be self-sufficient and dependence on his parents for food and shelter; reevaluate Plaintiff's subjective complaints in the context of his severe mental health conditions, and conduct any other proceedings not inconsistent with this opinion. Upon consideration,

**IT IS ORDERED:**

1. Plaintiff's Motion for Order Reversing the Commissioner's Decision (Filing No. 13) is granted;
2. Defendant's Motion for an Order Affirming the Commissioner's Decision (Filing No. 16) is denied; and
3. This matter is reversed and remanded for further proceedings consistent with this opinion.

Dated this 30th day of September, 2025.

BY THE COURT:

s/Michael D. Nelson
Unites States Magistrate Judge